**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VERNA DEAN JACKSON, <br><br>          Plaintiff <br><br>     v. <br><br> CAROLYN W. COLVIN, <br> Acting Commissioner of Social Security <br><br>          Defendant | CIVIL ACTION NO. 1:15-CV-01019 <br><br> (MEHALCHICK, M.J.) |

**MEMORANDUM OPINION**

This is an action brought under Sections 205(g) of the Social Security Act, 42 U.S.C. §405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Verna Dean Jackson's claim for disability insurance benefits. This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. For the reasons expressed herein, the Commissioner's decision shall be **VACATED** and this case **REMANDED** to conduct a new administrative hearing.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

Ms. Jackson worked for approximately thirteen years as a laundry worker for the same employer. She left that position in 2011, but continued to work. On May 30, 2013, Ms. Jackson protectively filed an application for disability insurance benefits alleging that she became disabled on May 17, 2013, when she was forty-six years old, due to the following ailments: lower back problems and depression. (Doc. 6-6, p. 19; Admin. Tr. 190). Ms. Jackson alleges

that her conditions affect her ability to lift, squat, bend, stand, walk, sit, kneel, climb stairs, complete tasks, concentrate, and use her hands. (Doc. 6-6, p. 15; Admin. Tr. 186). Ms. Jackson testified that, as of October 2014, she could stand or walk for no more than ten minutes at one time secondary to pain in her legs and feet. (Doc. 6-2, pp. 80-81; Admin. Tr. 79-80). Ms. Jackson reported that she was let go from her most recent job because her inability to stand for long periods made it impossible for her to perform her duties. (Doc. 6-2, p. 82; Admin. Tr. 81). She testified that the heaviest weight she can lift or carry is twenty pounds. (Doc. 6-2, pp. 83-84; Admin. Tr. 82-83). Ms. Jackson also testified that she experiences racing thoughts that impair her ability to focus and interfere with her sleep, nervousness, and lack of motivation.

On March 29, 2007, a clinician completed a form for the U.S. Department of Labor describing Ms. Jackson's impairments. (Doc. 6-7, pp. 15-18; Admin. Tr. 241-44). The clinician reported that Ms. Jackson had a serious chronic health condition due to low back pain and strain, and that it was medically necessary that Ms. Jackson be permitted to sit down periodically to take stress off her back for at least five minutes every two hours. *Id.* The clinician also reported that Ms. Jackson suffered from fatigue and lightheadedness at times secondary to anemia. *Id.* The clinician noted that Ms. Jackson was not incapacitated from her conditions and could still work, but would require breaks and rest. *Id.*

Ms. Jackson was examined by Dr. Kurt Moran ("Dr. Moran") for the first time on January 29, 2013. During that examination, Dr. Moran completed a comprehensive physical assessment. (Doc. 6-11, pp. 69-72; Admin. Tr. 622-25). Ms. Jackson presented complaining of lower back pain that started seven or eight years ago, and leg pain. Dr. Moran noted that Ms. Jackson had increased pain in her lumbar spine on flexion, extension, right and left rotation, and right and left side bending. He also noted that Ms. Jackson had a decreased range of

motion in her lower extremity. Ms. Jackson rated her pain as a nine, on a scale of one to ten with ten being the worst pain. Exacerbating factors included walking and bending. Her pain was alleviated by sitting. Ms. Jackson could sit for twenty minutes at one time, walk for twenty minutes at one time, stand for twenty minutes at one time, and drive for up to one hour. Ms. Jackson had full strength in her upper and lower extremities.

On August 22, 2013, Dr. Moran completed a medical form in which he assessed that Ms. Jackson had been unable to work since January 29, 2013, due to lower back pain, lumbar degenerative disc disease, hypertension, gastroesophageal reflux disease, and depression. (Doc. 6-10, p. 90; Admin. Tr. 554). Dr. Moran opined that Ms. Jackson's condition would persist for twelve months or more.

During the initial administrative review of Ms. Jackson's claim, psychologist Tiffany Griffiths ("Dr. Griffiths") examined Ms. Jackson on September 25, 2013, and State agency psychologist John Rohar ("Dr. Rohar") evaluated Ms. Jackson's mental impairments based on the evidence that was available prior to October 3, 2013. (Doc. 6-11, p. 2-8; Admin. Tr. 555-61); (Doc. 6-3, pp. 6-7, 9-11; Admin. Tr. 110-11, 113-15).

Dr. Griffiths noted on examination that Ms. Jackson's concentration was poor because she struggled in performing serial 7's and could only recall three digits forward. (Doc. 6-11, p. 2-8; Admin. Tr. 555-61). Dr. Griffiths also reported that Ms. Jackson's impulse control was poor, and that Ms. Jackson was reactive and easily agitated. *Id.* Dr. Griffiths diagnosed major depressive disorder, recurrent to moderate. *Id.* She assessed that Ms. Jackson could adequately engage in activities of daily living, but that her impairments resulted in moderate difficulty maintaining social functioning and poor concentration. *Id.* In an accompanying medical source statement Dr. Griffiths opined that Ms. Jackson would have moderate difficulty: understanding

and remembering complex instructions; carrying out complex instructions; interacting appropriately with the public, supervisors, and co-workers; and responding appropriately to usual work situations and to changes in a routine work setting.[1] *Id.* Dr. Griffith's opined that Ms. Jackson would have mild difficulty: understanding and remembering simple instructions; carrying out simple instructions; and making judgments on complex work-related decisions. *Id.* Dr. Griffiths explained that Ms. Jackson experiences chronic pain and has been avoidant and easily agitated as a result. *Id.*

Dr. Rohar completed a psychiatric review technique ("PRT") assessment and mental residual functional capacity ("RFC") assessment. Dr. Rohar assessed that Ms. Jackson had a medically determinable affective disorder that resulted in: mild restriction of activities of daily living; moderate difficulties maintaining social functioning; moderate difficulties maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration. (Doc. 6-3, pp. 6-7, 9-11; Admin. Tr. 110-11, 113-15). In his mental RFC assessment, Dr. Rohar assessed that Ms. Jackson could: perform simple, routine, repetitive work in a stable environment; ask simple questions and accept instruction; and sustain an ordinary routine without supervision. *Id.* He concluded that Ms. Jackson's mental limitations do not preclude her from performing the basic mental demands of competitive work on a sustained basis. *Id.*

---

[1] The medical source statement form completed by Dr. Griffiths asked the doctor to rate Ms. Jackson's ability to perform a series of activities on the following scale: extreme, marked, moderate, mild, and none. (Doc. 6-11, p. 2; Admin. Tr. 555). Extreme is defined as a major limitation resulting in no useful ability to function. Marked is defined as a serious limitation resulting in substantial loss in the ability to effectively function. Moderate is defined as a limitation that is "more than slight" but does not prevent an individual from performing satisfactorily. Mild is a slight limitation that does not prevent an individual from functioning well.

On October 4, 2013, Ms. Jackson's claim was denied at the initial level of administrative review. Thereafter, Ms. Jackson requested an opportunity to present her claim during an administrative hearing. Ms. Jackson continued to submit additional evidence to support her allegations while waiting for her administrative hearing to take place.

In an undated multiple impairment questionnaire received by the Social Security Administration after October 2013, Dr. Moran reported that Ms. Jackson's current diagnoses included: chronic nonmalignant pain syndrome, lumbosacral degenerative disc disease, lumbosacral radiculopathy, and lumbosacral myofascial pain syndrome. (Doc. 6-11, pp. 15-22; Admin. Tr. 568-75). He assessed that Ms. Jackson was totally medically disabled as a result of these conditions. *Id.* Dr. Moran opined that Ms. Jackson could: sit no more than one hour per eight-hour day, and be permitted to move around every fifteen minutes; stand/walk no more than one hour per eight-hour day; occasionally lift or carry up to five pounds; never grasp, twist or turn objects with her left or right hand; and never push, pull, kneel, bend, or stoop. *Id.* Dr. Moran assessed that Ms. Jackson's symptoms (i.e., pain) would constantly interfere with her ability to maintain concentration and attention, and that she would require between four and five unscheduled breaks during the workday. *Id.* He also estimated that Ms. Jackson would likely be absent from work more than three times per month as a result of her impairments or treatment. *Id.*

On October 28, 2014, a hearing was convened before Administrative Law Judge Michele Stolls ("ALJ"). Ms. Jackson appeared and testified with the assistance of counsel. Impartial vocational expert Nadine Henzes ("VE Henzes") also appeared and testified during the administrative hearing. The record in this case was left open for twenty-one days to provide Ms. Jackson an opportunity to submit additional evidence. On December 5, 2014, the ALJ

issued a written decision denying Ms. Jackson's claim. Ms. Jackson sought, and was denied, review by the Appeals Council of the Office of Disability Adjudication and Review. The Appeals Council's March 2015 denial of review makes the ALJ's October 2014 decision the final decision of the Commissioner subject to judicial review by this Court.

Ms. Jackson initiated this action by filing a complaint on May 26, 2015. (Doc. 1). In her complaint, Ms. Jackson alleges that the Commissioner's final decision denying her claim is contrary to the law and that the Commissioner's findings of fact are not supported by substantial evidence. As relief, she requests that this Court modify the Commissioner's decision and grant her benefits, and for any other relief as is just and proper. On August 13, 2015, the Commissioner filed her answer. (Doc. 5). In her answer, the Commissioner argues that her final decision was made in accordance with the law and that her findings of fact are supported by substantial evidence. Together with her answer, the Commissioner filed a certified copy of the transcript of the entire record of administrative proceedings in this case. (Doc. 6).

This matter has been fully briefed by the parties and is ripe for decision. (Doc. 7; Doc. 8).

## II. STANDARD OF REVIEW

To receive benefits under Title II of the Social Security Act, the claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To satisfy this requirement, the claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant number in the national economy. 42

U.S.C. § 423(d)(2)(A). In addition, a claimant must meet an insured status requirement. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131.

In evaluating the question of whether a claimant is under a disability as it is defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 ("Listing of Impairments"); (4) whether the claimant is able to do his past relevant work, considering his current residual functional capacity ("RFC");[2] and, (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his current RFC, age, education, and work experience. *Id.* The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him from doing his past relevant work. 20 C.F.R. § 404.1512(a). Once the claimant has established at step four that he cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f).

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final

---

[2] A claimant's RFC is the most a claimant can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1); *see also Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). Before the ALJ goes from step three to step four, he or she assesses the claimant's RFC. 20 C.F.R. § 404.1520(a)(4). The RFC is used at step four and step five to evaluate the claimant's case.

decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F.Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question before this Court, therefore, is not whether Ms. Jackson is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); *Burton v. Schweiker*, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of

review on legal matters is plenary); *Ficca,* 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

### III.   THE ALJ'S DECISION

In her December 5, 2014, decision the ALJ found that Ms. Jackson meets the insured status requirement of Title II of the Social Security Act through March 31, 2018. The ALJ then assessed Ms. Jackson's claim at each step of the five-step sequential evaluation process before concluding that Ms. Jackson did not meet the statutory definition of disability during the period of time relevant to the ALJ's decision.

At step one the ALJ found that Ms. Jackson had not engage in substantial gainful activity between May 17, 2013, and December 5, 2014. (Doc. 6-2, p. 26; Admin. Tr. 25). At step two the ALJ found that Ms. Jackson had the following medically determinable severe impairments: obesity, degenerative disc disease of the lumbar spine, anxiety, depressive disorder with psychotic features, plantar fasciitis (left foot), and foreign metallic body (left foot). *Id.* The ALJ also found that Ms. Jackson had the following medically determinable but non-severe impairments: chronic malignant pain syndrome, gastroesophageal reflux disease, hypertension, skin lesion of the face, and xanthelasma of the eyelid. *Id.* At step three the ALJ found that Ms. Jackson did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 6-2, p. 27-29; Admin. Tr. 26-28).

Before moving on to step four, the ALJ assessed Ms. Jackson's RFC. The ALJ assessed that, during the relevant period, Ms. Jackson had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except that:

> she is limited to occupations that require no more than occasional postural maneuvers, such as balancing, stooping and climbing ramps and stairs. The claimant must avoid climbing ladders, ropes or scaffolds, kneeling, crouching, or crawling. The claimant must avoid occupations requiring pushing or pulling with the lower extremities, to include the operation or pedals. She must avoid concentrated prolonged exposure to temperature extremes, vibrations, extreme dampness and humidity or exposure to dangerous machinery and unprotected heights. The claimant is limited to occupations that require no more than simple, routine tasks, not in a fast-paced production environment, involving only simple work decisions and, in general, few work place changes. The claimant is limited to occupations involving no more than occasional interaction with supervisors, co-workers and members of the general public.

(Doc. 6-2, p. 29; Admin. Tr. 28).

At steps four and five of the sequential evaluation process, the ALJ's findings were based on the above RFC assessment and testimony by VE Henzes. VE Henzes testified that an individual with the RFC described above would be unable to perform any of Ms. Jackson's past relevant work. (Doc. 6-2, p. 102; Admin. Tr. 101). Based on this testimony, the ALJ found that Ms. Jackson could not engage in any of her past relevant work. (Doc. 6-2, pp. 33-34; Admin. Tr. 32-33). VE Henzes also testified that, considering Ms. Jackson's vocational factors and the ALJ's RFC assessment, Ms. Jackson could adjust to other work, including the following occupations: label coder (DOT #920.687-014); label printer (DOT # 585.685-062); and inspector (DOT #689.687-014). (Doc. 6-2, p. 102; Admin. Tr. 101). VE Henzes reported that there are 76,000 jobs as a label coder in the national economy and 40 in the regional economy, 364,465 jobs as a label printer in the national economy and 40 in the regional economy, and 86,568 jobs as an inspector in the national economy and 98 in the regional economy. *Id.* At step five of the sequential evaluation process, the ALJ found that Ms. Jackson could adjust to "other work" that exists in the national economy in significant number. (Doc. 6-2, pp. 34-35; Admin. Tr. 33-34).

## IV. ANALYSIS

In deciding what weight to accord to competing medical opinions the ALJ is guided by factors outlined in 20 C.F.R. §404.1527(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the claimant, and therefore their opinions generally entitled to more weight. *See* 20 C.F.R. § 404.1527(c)(2)("Generally, we give more weight to opinions from your treating sources..."); 20 C.F.R. § 404.1502(defining treating source). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2); *see also* SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c). Furthermore, 20 C.F.R. § 404.1527(c)(2) requires that when the Commissioner "will always give good reasons in [her]

notice of determination or decision for the weight [she] gives to [a claimant's] treating source's opinion."

As an initial matter, all of Dr. Moran's opinions, if fully credited, appear to be inconsistent with an ability to perform the limited range of sedentary work descried in the ALJ's RFC assessment, or any other work that exists in the national economy. The full range of sedentary work "involves lifting no more than 10 pounds at a time and occasional lifting or carrying articles like docket files, ledgers and small tools." 20 C.F.R. § 404.1567(a). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* A job is "sedentary" if it requires no more than "occasional" (very little up to 1/3 of the workday) standing or walking. *Id.*; *see also* SSR 83-10, 1983 WL 31251 at *5 ("periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.").

In her RFC assessment, the ALJ found that Ms. Jackson could sit, stand, and walk for the period required in the performance of sedentary work, with additional postural, non-exertional, and environmental limitations. (Doc. 6-2, p. 29; Admin. Tr. 28). In contrast, Dr. Moran assessed in January 2013 that Ms. Jackson could sit no more than twenty minutes at one time, and stand or walk for no more than twenty minutes at one time. (Doc. 6-11, pp. 69-72; Admin. Tr. 622-25). Similarly, in his undated impairment questionnaire, Dr. Moran opined that Ms. Jackson could sit no more than one hour per eight-hour day (if permitted to move around every fifteen minutes), stand/walk no more than one hour per eight-hour day. (Doc. 6-11, pp. 15-22; Admin. Tr. 568-75).

In her decision, the ALJ accorded "little" weight to the opinions of Dr. Moran, the only acceptable medical source to address Ms. Jackson's physical RFC. In discounting this treating source opinion, the ALJ explained that:

> The undersigned assigns little weight to the opinions of Dr. Kurt Moran in Exhibits 1F, 8F, 11F and 13F as they are not well supported by the overall objective medical evidence of record, including his own treatment records. Dr. Moran did not provide detailed objective findings to support his limitations. Of note, prior to the claimant filing for disability, Dr. Moran provided a complete physical examination, which detailed findings with regard to range of motion and strength; however, subsequent treatment records show only brief notations. Also, he wrote her disability letters rather than referring her to specialists.

(Doc. 6-2, p. 33; Admin. Tr. 32).

Ms. Jackson's argument that the ALJ failed to cite good reasons in support of her decision to discount Dr. Moran's medical opinions is two-fold. First she contends that, contrary to the ALJ's finding, the record contains a great deal of objective findings supportive of Dr. Moran's assessment that Ms. Jackson cannot meet the demands of full time work. (Doc. 7, p. 18). In response to this argument, the Commissioner argues that the ALJ correctly found that Dr. Moran's opinions were inconsistent with the objective medical evidence – including Dr. Moran's own treatment notes. (Doc. 8, p. 10). "Overall, the substantial evidence standard is deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Furthermore, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). Ms. Jackson concedes that many of Dr. Moran's treatment notes were sparse or illegible and did not provide much insight into Ms. Jackson's condition. Making the same observation, the ALJ reasonably found that the opinion

was not well-supported. The regulations permit an ALJ to give a medical opinion more or less credit based on the extent the medical source provides support for that opinion. 20 C.F.R. § 404.1527(c)(3). As such, the Court declines Ms. Jackson's invitation to re-weigh the objective medical evidence, and find that her first argument is meritless.

Ms. Jackson's second argument, however, has considerable merit. She alleges that Dr. Moran's opinions about Ms. Jackson's physical limitations are not contradicted in the record. (Doc. 7, p. 19). It is well-established that "[i]n choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his own credibility judgments, speculation or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). Further, where the ALJ rejects the uncontradicted medical opinion of a treating source, the Court must question whether an ALJ's RFC assessment as a whole is supported by substantial evidence. "The administrative law judge cannot speculate as to a claimant's residual functional capacity but must have medical evidence, and generally a medical opinion regarding the functional capabilities of the claimant, supporting his determination." *Gormont v. Astrue*, 3:11-CV-02145, 2013 WL 791455 at*8 (M.D.Pa. Mar. 4, 2013).

In response, the Commissioner argues that the responsibility to assess a claimant's RFC is reserved to the ALJ, and that the ALJ is not required to solicit an opinion on a claimant's work capacity to support his or her opinion. In support of her argument, the Commissioner relies on *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356 (3d Cir. 2011). In *Chandler*, the claimant argued that error occurred when the ALJ reviewed the intervening developments in the record and, applying his own lay opinion, and concluded that the claimant had the same RFC assessed

by a non-examining source in a one-year-old medical opinion. *Id.* at 362. The Third Circuit found that, under these circumstances, an ALJ is not precluded from reaching an RFC assessment without independent medical review of every fact, and was not required to seek outside medical assistance to assess whether the year-old non-examining source opinion was consistent with the intervening developments in the record. *Id.* Specifically, the Commissioner relies on the following passage:

> Although reliance on State consultants' and treating physicians' opinions is common and ALJ's are required to consider any existing State consultant reports, *see* 20 C.F.R. §§ 404.1519, 404.1527(f), the regulations do not require ALJ's to seek outside expert assistance, *see* 20 C.F.R. §§ 404.1546(c), 404.1527(e), SSR 96-5p (July 2, 1996).

*Id.* Read in the context of the entire opinion, however, this language speaks to the issue of whether it is an improper lay opinion where an ALJ interprets a medical opinion in light of intervening evidence to formulate an RFC assessment. Unlike in *Chanlder*, however, where the ALJ relied on a medical opinion for the foundation of his RFC assessment and adjusted this assessment in light of new developments in the record, the ALJ in this case did not explain what evidence formed the foundation of her RFC assessment. Instead, she rejected many of the limitations assessed by the only medical source to issue an opinion about Ms. Jackson's physical capacity to sit, stand, and walk. As noted in *Gormont*, the determination of how long a claimant can sit, stand or walk is a medical one that must be made by a doctor. 2013 WL 791455 at*8 (*quoting Carolyn Kubitschek & Jon C. Dubin,* Social Security Disability Law and Procedure in Federal Courts, 287-88 (2011) *available on Westlaw at Social Security Disability Law & Procedure in Federal Court § 3:47*). Once a doctor determines, either through a medical opinion or by some other form of objective evidence, how long a claimant can sit, stand, or walk, then the ALJ can translate that medical determination into an RFC determination (i.e., whether a

claimant can engage in sedentary, light, medium, heavy, or very heavy work). *Id.* It is in this respect that the ALJ's decision fell short in this case, in that she failed to cite any medical evidence underlying her determination that Ms. Jackson was able to sit for six hours per eight-hour workday or stand and walk for two hours per eight-hour workday. The Court is left with no other choice but to infer that the ALJ's determination that Ms. Jackson could sit for six hours and stand or walk for two hours is the product of her own lay assessment of the objective medical evidence. Such assessments do not constitute substantial evidence. *See e.g., Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986)(finding that an ALJ's conclusion that a claimant could do light work was not supported by substantial evidence because the all of medical opinions of record found a greater degree of physical limitation). Accordingly, the Court finds that the ALJ's RFC assessment, and by extension her conclusion at step five of the sequential evaluation process, are not supported by substantial evidence and that this matter must be remanded to the Commissioner to conduct a new administrative hearing. Furthermore, on remand, the Commissioner should be free to further develop the record as she deems appropriate.

**V.    CONCLUSION**

Based on the foregoing, the Commissioner's decision shall be **VACATED** and this case will be **REMANDED** to the Commissioner to conduct a new administrative hearing.

Dated: August 15, 2016                                              *s/ Karoline Mehalchick*
                                                                                       **KAROLINE MEHALCHICK**
                                                                                       **United States Magistrate Judge**